Fei Fei Fan
100 Avenue G Apt 568
Bayonne, NJ 07002
(404) 432-4868
litmus9@msn.com
feifei.fan@hotmail.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEI FEI FAN,<br>                    Plaintiff,<br>vs.<br>State of Nevada Ex Rel. Board of Regents<br>of the Nevada System of Higher<br>Education, On Behalf of the University of<br>Nevada, Reno<br>                    Defendant. | Case No.: 3:24-cv-00427-MMD-CLB<br><br>**Plaintiff's Opposition to Defendant's Motion<br>for Summary Judgment** |

## I. Introduction

Defendant's Motion for Summary Judgment seeks relief that Rule 56 does not permit. It treats a disputed investigative and adjudicative process as settled. It asks the Court to accept Defendant's account of how the operative record was created and used, despite contrary evidence. Rule 56 requires the opposite. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Defendant also faults Plaintiff for lacking evidence as to matters Defendant itself controlled, possessed, or failed to produce. That includes internal records and comparator materials concerning the University's handling of similar complaints or faculty misconduct. Rule 56 does not permit a movant to control such materials and then seek summary judgment by pointing to the resulting gap. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 326 (1986).

Independently, the record presents triable disputes as to each dispositive theory Defendant advances. Plaintiff's evidence would permit a reasonable jury to reject Defendant's account of causation, the investigative process, and the justification on which its motion relies. That precludes

summary judgment. See *Tolan*, 572 U.S. at 657; *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1036–39 (9th Cir. 2005).

### II. Legal Standard Governing Defendant's Rule 56 Motion

Summary judgment is proper only if the movant shows that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law. In deciding such a motion, the Court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. The Court may not weigh evidence, make credibility determinations, or resolve competing reasonable inferences in favor of the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

A movant may also seek summary judgment by showing that the nonmovant lacks evidence on an essential element after adequate time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 326 (1986). But Rule 56 still does not permit judgment where material facts remain genuinely disputed or where the result would require the Court to adopt the movant's version of contested evidence over contrary record evidence. *Anderson*, 477 U.S. at 255; *Tolan*, 572 U.S. at 657.

### III. Factual Framework: The Disputed Process That Produced the Adverse Action

The record reflects a continuous sequence extending both before and after Plaintiff's 2021 complaint. Before the complaint, Plaintiff worked within a supervisory relationship marked by evaluative authority, professional dependence, and immigration-related vulnerability. (Ex. C at PF000001–14, PF000017–39.) After the complaint, the allegations arising from that relationship became the subject of the investigation and of the record generated within Defendant's systems. (Ex. C at PF000090–93; Ex. D at FA000021–25, FA000027–36.) That record was then carried forward into the proceedings that culminated in Plaintiff's termination. (Ex. E at UNR-000179–186, UNR-000001.) The material disputes therefore concern not only what the record shows, but how the record was created, carried forward, and used.

**A. The Supervisory Relationship and Pre-Complaint Conditions Predated the 2021 Filing**

Before Plaintiff filed her 2021 complaint, she worked within a supervisory relationship marked by professional dependence and immigration-related vulnerability. Plaintiff joined UNR in 2015 as a tenure-track professor whose immigration status and work authorization were tied to UNR's sponsorship. (Ex. C at PF000011–12.) Plaintiff also relied on Jiang for professional references and support related to her faculty candidacy and advancement. (Ex. C at PF000029–39, PF000231–34.)

**B. Plaintiff's Protected Complaint Initiated the Process Defendant Now Invokes**

In January 2021, Plaintiff filed a formal Title IX complaint alleging sex-based misconduct and coercive power dynamics. (Ex. C at PF000090–93.) That complaint constituted protected activity and initiated the Title IX process on which Defendant now relies.

**C. Defendant Generated the Investigative Record Within UNR-Controlled Systems**

The evidentiary record later invoked in disciplinary proceedings was generated within Defendant's Title IX process and maintained in UNR-controlled systems. (Ex. D at FA000033–36, FA000050–51.) Defendant personnel conducted interviews, prepared written summaries, and created investigative materials within those systems. (Ex. D at FA000025.) Metadata and related materials further reflect authorship, retention, and later modification within Defendant's own systems. (Ex. D at FA000082–90.)

**D. The Same Record Was Carried Forward into Discipline and Termination**

The investigative materials generated during Defendant's Title IX process were later carried forward into the disciplinary proceedings that culminated in Plaintiff's termination. (Ex. D at FA000033–36, FA000050–51, FA000055–56; Ex. E at UNR-000180–186, UNR-000780–87, UNR-000001.) That later process included reliance by UNR-retained outside investigators and adjudicators on earlier UNR-generated materials. (Ex. F at UNR-039600–06.) Related communications also reflect that TNG functioned within UNR's internal case-reporting and routing structure, rather than independently of it. (Ex. F at UNR-010825–37.)

**E. The Record's Integrity, Completeness, and Testability Are Materially Disputed**

Plaintiff disputes the integrity, completeness, and testability of the investigative record. The evidence raises disputes as to whether interview summaries were reviewed and signed as contemplated by the University's process materials, whether Plaintiff's statements were accurately reflected, and whether later proceedings relied on materials not fully contained in the disclosed investigation file. (Ex. D at FA000025, FA000082–090, FA000097–121; Ex. E at UNR-000185–186, UNR-000783; Ex. F at UNR-039600–06.)

**F. The Record Reflects a Continuous Chain from Pre-Complaint Conditions to Termination**

Taken together, the record reflects a continuous sequence from the pre-complaint supervisory relationship and conditions at issue, through Plaintiff's 2021 complaint, the investigation that followed, the creation of the investigative record within Defendant's systems, the later proceedings that relied on that record, and the resulting termination. Defendant treats those events as separate and independently occurring. The record permits a different account: that they formed a connected process through which the record underlying the adverse action was created, carried forward, and used.

**IV. Rule 56 Does Not Permit Recasting a Disputed Process and Record as Undisputed**

Defendant's motion rests on propositions that, in many instances, are not genuinely material to the claims on which it seeks judgment. Even where Defendant identifies facts that may be material, those facts still cannot be treated as undisputed on this record. Rule 56 does not permit judgment on that basis. Nor may Defendant invoke an absence of evidence as to matters it controlled, possessed, or failed to produce. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Plaintiff therefore submits Appendix A on record control and Appendix B on Defendant's factual assertions.

**A. Rule 56 Does Not Permit Treating the Process as Neutral as a Matter of Law**

Defendant cannot obtain summary judgment by asking the Court to treat the process leading to Plaintiff's termination as a neutral forum for credibility assessment and evidentiary evaluation. The record permits disputes as to whether Plaintiff's participation was constrained, whether evidence was gathered and weighed on equal terms, and whether materials supplied by

Jiang were treated more favorably than Plaintiff's submissions and identified witnesses. Those are not summary-judgment determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1036–39 (9th Cir. 2005).

On this record, the investigation, the resulting constraints on Plaintiff's participation, and the later hearing structure are not merely background facts. A reasonable factfinder could view them as part of the challenged causal sequence culminating in termination. The dispute extends to how materials were gathered, characterized, and weighted, to whether outside actors retained by UNR can be treated as neutral as a matter of law, and to whether Plaintiff's participation was practically equal in the hearing process. Those are factfinder questions, not summary-judgment determinations. Retaliation is not limited to the final termination alone. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The tenure timeline does not foreclose a later retaliatory sequence or the causal inference arising from it. Even if Plaintiff received a favorable tenure decision before filing her protected complaint, that earlier event does not preclude later investigative or disciplinary acts after the complaint. (Ex. C at PF000038.) Ninth Circuit law does not treat an earlier favorable action as dispositive where the record permits a later causal sequence after protected activity. See *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (2003); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (2003).

**B. Rule 56 Does Not Permit Treating the Record as Fixed, Reliable, or Fully Testable**

Defendant likewise cannot obtain summary judgment by treating the operative record as fixed, reliable, and fully testable. The problem is not merely a disagreement about interpretation. The record itself remains disputed as to its formation, completeness, integrity, and testability. Those are not issues the Court may resolve as a matter of law on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–99 (9th Cir. 2015); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).

5

The produced interview summaries attributed to Plaintiff do not reflect her review or signature, notwithstanding process materials contemplating both. (Ex. D at FA000025, FA000082–90, FA000097–121.) The produced policy materials likewise reflect that the governing hearing framework changed over time, including by permitting the hearing officer, to the extent permitted by law, to consider certain reliable and relevant statements and materials even where a party or witness did not submit to cross-examination. Compare Ex. E at UNR-000164–66 (Rev. 290 (08/20)) with Ex. E at UNR-000039–43 (Rev. 305 (07/23)). The hearing determination states that the final investigation report served as the basis for the formal hearing, that Augdahl's interview notes were critical to the analysis, and that those notes were missing from the hearing file and were obtained only after the hearing because of a technical error. (Ex. E at UNR-000185–86; Ex. F at UNR-039601.)

Defendant cannot obtain summary judgment by invoking an alleged absence of evidence as to materials it controlled, possessed, or failed to produce. Nor may the Court treat disputed materials as dispositive merely because Defendant presents them as definitive. See *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773–74 (9th Cir. 2003); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 326 (1986).

**C. Rule 56 Does Not Permit Treating the Resulting Decision as Undisputed**

A later decision does not become independent merely by appearing later in time, by being framed as a separate institutional determination, or by being repeated through later internal review. If it rests on the same disputed process and record, it remains part of the same disputed causal chain. Internal layering and later ratification do not sever that chain or cure antecedent defects in neutrality or record formation. *Anderson*, 477 U.S. at 255; *Tolan*, 572 U.S. at 657; *Dominguez-Curry*, 424 F.3d at 1036–39.

Nor does the same-day termination of both parties establish neutrality or independence. Equivalent endpoints do not eliminate triable disputes concerning the process that produced them, the record on which they were based, or the competing reasonable inferences that remain available

on this record. Rule 56 therefore forecloses judgment as a matter of law. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Dominguez-Curry, 424 F.3d at 1036–39*; *Anderson*, 477 U.S. at 248, 255.

## V. Counts I and IV Survive Summary Judgment Because the Record Presents Triable Issues of Material Adversity, Causation, and Pretext

Defendant is not entitled to summary judgment on Counts I and IV because a reasonable jury could find that Plaintiff's protected complaint set in motion the same process and evidentiary chain later invoked to justify the adverse action against her. On this record, but-for causation and retaliatory motive are jury questions, not issues the Court may resolve as a matter of law. See *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724–27 (9th Cir. 2012); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

**A. Exhaustion Does Not Bar Counts I and IV**

Defendant's exhaustion theory fails as a matter of law as to Count I and does not warrant summary judgment on Count IV. Title IX imposes no administrative exhaustion requirement. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009). And because Title IX prohibits discrimination on the basis of sex, 20 U.S.C. § 1681(a), and encompasses retaliation for complaining of sex discrimination, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005), Count I cannot be defeated by importing Title VII charge-filing rules into a Title IX retaliation claim.

As to Count IV, Title VII's charge-filing requirement is nonjurisdictional, not a jurisdictional threshold bar of the kind Defendant's motion implies. *Fort Bend County v. Davis*, 587 U.S. 541, 543–44, 551–52 (2019); 42 U.S.C. § 2000e-5(e)(1), (f)(1). Nor are later allegations automatically excluded in the Ninth Circuit where they are like or reasonably related to the charge, fall within the scope of the investigation reasonably expected to grow out of the charge, or are consistent with the plaintiff's original theory of the case. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456–57 (9th Cir. 1990); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002); *Ariz. ex rel. Horne v. GEO Group, Inc.*, 816 F.3d 1189, 1208–09 (9th Cir. 2016).

Defendant cannot obtain summary judgment on Count IV by re-labeling investigation- and hearing-related events as separately unexhausted components of an otherwise connected retaliatory course of conduct. At minimum, even if some such events are not independently actionable, they remain relevant as background evidence bearing on motive, causation, pretext, and institutional response. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

**B. Protected Activity Is Established as a Matter of Law**

Plaintiff's January 2021 complaint constitutes protected activity as a matter of law. Defendant does not dispute that the complaint was made, and protected status does not turn on Defendant's view of the allegations' truth. Complaining of sex discrimination is protected under Title IX, and the same complaint also constitutes protected opposition under Title VII. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724–25 (9th Cir. 2012).

**C. The Challenged Conduct Is Materially Adverse**

Defendant cannot defeat the materially adverse element by recasting outcome-shaping conduct as mere procedure. The standard is objective: whether the challenged conduct well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). On this record, that element cannot be resolved for Defendant as a matter of law.

This was not process in the abstract. A reasonable jury could find that the challenged investigative and disciplinary steps shaped the evidentiary record, constrained Plaintiff's ability to defend herself within the process, and culminated in the loss of her position. Under *Burlington Northern* and *Emeldi*, summary judgment is unavailable on material adversity.

**D. Causation Remains Triable**

Defendant's causation theory fails because it depends on severing the termination from the process that produced it. A later decision does not break causation where it rests on the same challenged process, inputs, or record rather than on a genuinely independent basis. See *Staub v. Proctor Hosp.*, 562 U.S. 411, 419–22 (2011); *Poland v. Chertoff*, 494 F.3d 1174, 1182–84 (9th

8

Cir. 2007). At summary judgment, Defendant cannot fragment that sequence and demand that each segment be assessed apart from the whole. The prima facie burden is minimal, and chronology and surrounding circumstances may support an inference of causation. *Emeldi v. Univ. of Or.*, 698 F.3d 715, 726–27 (9th Cir. 2012); *Opara v. Yellen*, 57 F.4th 709, 722–23 (9th Cir. 2023).

Defendant's reliance on tenure does not alter that conclusion. Even if tenure was recommended or approved before Plaintiff's complaint, that earlier favorable event does not negate a later retaliatory sequence after the complaint was filed. (Ex. C at PF000038.) One favorable action does not immunize subsequent investigative or disciplinary conduct.  See *Coszalter v. City of Salem*, 320 F.3d 968, 977–78 (9th Cir. 2003); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003).

Nor can Defendant defeat causation by pointing to communications it possessed earlier but invoked as termination grounds only after Plaintiff complained. A reasonable jury could treat that timing, together with the surrounding procedural disparities, as evidence of causation rather than its negation.

**E. Pretext Is for the Jury**

Defendant cannot prevail on pretext without asking the Court to assume the validity of the very process from which its explanation is drawn, including adverse inferences and implications reflected in the hearing officer's treatment of the investigative and hearing materials. This is not a case involving a genuinely independent explanation for termination. Defendant's justification rises or falls with the same disputed process and evidentiary record it asks the Court to treat as settled.

Once a factfinder could disbelieve the employer's stated reason, summary judgment is ordinarily improper. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000). Pretext may be shown indirectly by evidence that the employer's explanation is internally inconsistent or otherwise unworthy of credence. *Opara*, 57 F.4th at 723; *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000).

A reasonable jury could find pretext here. Defendant's justification rests on a record that was unverified in material respects, modified within Defendant's systems, and developed under

conditions that impaired Plaintiff's participation. It also depends on previously tolerated or stale conduct being elevated into termination grounds only after Plaintiff's protected complaint, while disputed procedural choices are recast as neutral. A jury could find that explanation unworthy of credence.

To the extent Count IV requires but-for causation under *Nassar*, that standard does not entitle Defendant to judgment here. A reasonable jury could find that, but for Plaintiff's protected complaint, Defendant would not have pursued termination on the same grounds, in the same manner, through the same disputed process. And if later decisionmakers relied on biased or incomplete inputs generated within that process, a jury could likewise find that they functioned as conduits rather than as independent actors. See *Staub v. Proctor Hosp.*, 562 U.S. 411, 419–22 (2011); *Poland v. Chertoff*, 494 F.3d 1174, 1182–84 (9th Cir. 2007).

**F. Earlier Events Remain Relevant as Background Evidence**

Defendant cannot narrow the timely claim by isolating the final termination from the sequence that produced it. Even where earlier acts are not independently actionable, they remain relevant as background evidence bearing on motive, context, causation, and pretext. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The investigative choices, evidentiary decisions, and procedural conditions following Plaintiff's complaint therefore remain part of the factual context in which the later adverse action must be understood.

**VI. Count II Survives Summary Judgment Because the Record Presents Triable Issues of Actual Knowledge, Deliberate Indifference, and Equal Access**

Count II survives summary judgment because a reasonable jury could find actual knowledge, a clearly unreasonable response, and a resulting deprivation of Plaintiff's equal access to the terms and benefits of her position. Those questions are not resolved as a matter of law on this record. See *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *Brown v. Arizona*, 82 F.4th 863 (9th Cir. 2023).

**A. Actual Knowledge Remains Triable**

Defendant had actual knowledge, at the latest, when Plaintiff filed her January 2021 Title

IX complaint. For Title IX damages liability, actual knowledge exists when an official with authority to address the alleged discrimination and institute corrective measures has actual notice of the misconduct. *Gebser*, 524 U.S. at 290. Plaintiff's complaint did not allege isolated acts divorced from context. It alleged sex-based misconduct within a relationship defined by evaluative authority, coercive power dynamics, professional dependence, and immigration-related vulnerability. That was sufficient to place Defendant on notice not only of the alleged conduct, but of the coercive setting in which it was alleged to have occurred.

Defendant cannot reduce actual knowledge to a handful of discrete acts or transform notice into a requirement of pre-adjudicated certainty. A harassment complaint need not already be undisputed or corroborated to fairly alert a school to the potential for sexual harassment. *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1034 (D. Nev. 2004). Where the record permits competing inferences as to what responsible officials knew and whether an official with corrective authority was on notice, summary judgment is improper. *Brown*, 82 F.4th 863. Actual knowledge remains triable.

**B. The Adequacy of Defendant's Response Remains Triable**

Defendant likewise is not entitled to judgment on the theory that its response was reasonable as a matter of law. The question is not whether Defendant can identify institutional activity following Plaintiff's complaint. It is whether, viewing the record in Plaintiff's favor, a reasonable jury could find Defendant's response clearly unreasonable in light of the known circumstances. *Davis*, 526 U.S. at 648.

A reasonable jury could find that the investigation failed to pursue identified witnesses, relied on unverified and disputed interview summaries, incorporated materials later subject to modification, and required highly sensitive materials to be handled across the investigative and adjudicative chain without adequate safeguards. It could likewise find that Plaintiff's ability to access, review, and test the evidentiary record was restricted, and that her ability to participate meaningfully in the hearing process was impaired. A reasonable jury could also find that Defendant's response was not timely and steadily corrective, but instead delayed and later accelerated under internal and external timing pressure: EO/TIX's own materials reflect a

complaint filed in January 2021, later concern over a compressed timeline, December 2022 EEOC-related requests, and OGC's later demand that an investigation report be completed on roughly ten business days' notice. (Ex. F at UNR-010618–38.)

Those features bear directly on whether Defendant's response was clearly unreasonable in light of the known circumstances. The deliberate-indifference standard is demanding, but it does not entitle an institution to judgment where a reasonable jury could find that, after actual notice of serious allegations, its response was one-sided, not meaningfully protective, and not reasonably calculated to preserve equal access on fair terms. See *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999); *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020); *Brown v. Arizona*, 82 F.4th 863 (9th Cir. 2023). The adequacy of Defendant's response therefore remains triable.

**C. A Jury May Find That Defendant's Response Itself Contributed to the Deprivation of Equal Access**

Count II is not confined to the underlying conduct of the accused faculty member; it also reaches Defendant's response after actual knowledge. Title IX liability extends to the recipient's own deliberate indifference where its response to known harassment is clearly unreasonable and contributes to the deprivation of equal access. *Davis*, 526 U.S. at 642–45, 648.

Equal access cannot be reduced to Defendant's description of what process was formally available. A reasonable jury could find that access was not equal where Plaintiff could not timely review or correct the interview summaries attributed to her, could not test the evidentiary record on fair terms, and could not participate in the hearing process in a manner sufficient to defend her position within the institution. Access to key materials, including interview summaries, only about two years later does not establish meaningful access when review no longer served its intended function. Nor does a formally available hearing establish equality of access if participation was practically constrained or impaired.

Where a reasonable jury could find that Defendant's response itself shaped the evidentiary and disciplinary path in a manner that affected Plaintiff's access, participation, or status, summary

judgment on Count II is unavailable. See *Davis*, 526 U.S. at 648; see also *Karasek*, 956 F.3d at 1105.

**VII. Count III Survives Summary Judgment Because the Record Presents Triable Issues of Participation, Benefit, and Actual or Constructive Knowledge**

To the extent the Court reaches Count III, summary judgment is unavailable. Section 1595(a) imposes civil liability on one who knowingly benefits from participation in a venture that the defendant knew or should have known engaged in a Chapter 77 violation. 18 U.S.C. § 1595(a). On this record, participation, benefit, and actual or constructive knowledge cannot be resolved in Defendant's favor as a matter of law.

**A. Beneficiary Participation and Benefit Remain Triable**

Defendant cannot obtain summary judgment by recasting the benefits it continued to derive from Jiang's institutional role as incidental to ordinary university operations. Institutional form does not negate benefit, and academic channels do not break participation.

On this record, a reasonable jury could find that, even after UNR had notice of serious allegations concerning Jiang's conduct, it allowed him to remain in roles that continued to generate academic and institutional value for the University, including through teaching, mentoring, research, and related professional or funding benefits, rather than removing him from that position. (Ex. F at UNR-003678, UNR-10634–36.)

Participation under § 1595(a) does not require proof that Defendant operated or managed the venture; recent Ninth Circuit authority confirms that venture participation may remain triable where the defendant's role is commercial or institutional rather than managerial. See *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541, 560–61 (9th Cir. 2026); *Ricchio v. McLean*, 853 F.3d 553, 556–58 (1st Cir. 2017). Participation and benefit therefore remain triable.

**B. Whether Defendant Knew or Should Have Known Remains Triable**

Defendant is not entitled to summary judgment on knowledge. At a minimum, it had actual notice when Plaintiff filed her January 2021 complaint, which described a relationship shaped by evaluative authority, professional dependence, and immigration-related vulnerability. A

13

reasonable jury could find that this notice was sufficient to alert Defendant not only to the reported conduct, but also to the coercive conditions through which labor or services were alleged to have been obtained.

Section 1595(a) reaches not only actual knowledge but what Defendant should have known. See *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725–26 (11th Cir. 2021). Where the record permits competing inferences on those questions, knowledge is for the factfinder, not for resolution as a matter of law. See *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541, 561–62 (9th Cir. 2026); see also *Ricchio v. McLean*, 853 F.3d 553, 556–58 (1st Cir. 2017).

Defendant likewise cannot defeat knowledge by treating the end of the alleged sexual-services phase as the end of the relevant institutional structure. Even if sexual services ceased by 2019, a reasonable jury could find that the same structure persisted and that Defendant's continued institutional reliance after notice supports an inference that it knew or should have known of the underlying coercive conditions.

**C. Legal Uncertainty Does Not Entitle Defendant to Summary Judgment**

Any legal uncertainty about how § 1595(a) applies in an institutional setting does not support summary judgment. Beneficiary-liability analysis may involve both statutory-interpretation questions and record-specific factual disputes, and those disputes cannot be resolved against a plaintiff by adopting an unduly narrow view of participation or refusing to draw reasonable inferences in the plaintiff's favor. See *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541, 559–62 (9th Cir. 2026); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723–26 (11th Cir. 2021). *Ricchio* points in the same direction: where defendants allegedly continued to profit from and maintain a coercive arrangement despite visible indicia of exploitation, participation, benefit, and knowledge may be inferred rather than dismissed at the threshold. See *Ricchio*, 853 F.3d at 556–58. Summary judgment on Count III therefore is unavailable.

### VIII. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment should be denied in full. Rule 56 does not permit Defendant to convert disputed process, a disputed record, and

14

disputed inferences into judgment as a matter of law. On this record, Defendant is not entitled to judgment on the dispositive issues addressed in Sections V, VI, and VII.

Respectfully submitted,

Dated: April 06, 2026

_Fei Fei Fan._
_____

Fei Fei Fan

Plaintiff, Pro Se

**Appendix A — Institution-Controlled Record Categories and Record-Accounting Gaps**

**Relevant to Defendant's Motion for Summary Judgment**

Appendix A summarizes categories of institution-controlled materials relevant to Defendant's Motion for Summary Judgment that Plaintiff sought through written discovery and related records requests. It identifies record categories bearing on Defendant's summary-judgment theories and highlights where the present record does not clearly establish the scope of search, preservation, collection, production, supplementation, or disclosure associated with those materials.

**A-1. Institution-Controlled Record Categories and Discovery Record Relevant to Rule 56**

The summary below is drawn from Exhibit A. Unless otherwise noted, the entries summarize the responses collected there. Exhibit A further states that earlier original responses to Plaintiff's First, Second, and Third Requests for Production were previously filed on the docket in connection with Plaintiff's motion to compel (ECF No. 96); any row relying on the full response history should be understood accordingly.

**Abbreviations:** ROG = Plaintiff's First Interrogatories; RFP = Requests for Production; Supp. Resp. = supplemental response.

This table summarizes institution-controlled record categories raised in Plaintiff's written discovery, the corresponding responses, and the response-level limits relevant to Defendant's Rule 56 arguments. It reflects UNR's interrogatory responses and later RFP responses, including supplemental responses; earlier original responses to Plaintiff's First, Second, and Third Requests for Production were filed on the docket in connection with Plaintiff's motion to compel.

| Evidence Category | Discovery Response / Remaining Issue | Rule 56 Point |
|---|---|---|
| Search Scope | ROG 1 sought custodians, repositories, date ranges, and exclusions. UNR answered only in generalized terms and did not identify the requested custodians, repositories, or exclusions in the response itself. | Defendant assumes a sufficiently defined search universe, but the response does not clearly provide one. |
| Preservation / Holds | ROG 2 sought hold dates, recipients, covered categories, covered systems, and continuing effect; RFP 16 likewise sought hold and preservation records. UNR pointed to produced hold materials and stated that all holds remain in place, but did not provide those details in the response itself and, as to RFP 16, identified only a Bates range. | Defendant treats the record as complete and stable without clearly accounting for institution-controlled preservation measures. |
| Deleted / Unavailable ESI | ROG 3 sought deletion, retention, and restoration information; RFP 39 and 42 likewise sought related | Defendant relies on the existing record, but |

| Evidence Category | Discovery Response / Remaining Issue | Rule 56 Point |
|---|---|---|
| | settings or logs. UNR stated that some potentially relevant materials may have been deleted pursuant to retention policies, produced those policies, stated that it had produced responsive documents as to RFP 39, and, as to RFP 42, objected without a substantive production statement in the response itself. | institution-controlled loss, retention, and restoration issues remain only partially accounted for. |
| Drafting / Revision Trail | ROG 5 identified some participants and roles in the report, determination, and appeal chain. RFP 1, 10, 41, and 45 sought draft and routing materials. In the cited responses, UNR identified some participants, pointed to broad Bates ranges, and in several instances stated only that it had produced responsive documents, without clearly setting out a complete drafting or routing record. | Defendant treats the report-and-determination chain as authoritative, but the cited responses do not clearly set out a complete drafting or routing record. |
| Interview Memorializations | RFP 2 sought notes, summaries, memorializations, and related interview materials. UNR responded by identifying broad Bates ranges, but did not clearly state in the response whether all underlying interview memorializations were included within the cited production. | Defendant relies on the resulting record as reliable, but the cited response does not clearly account for the completeness of the underlying interview memorializations. |
| Witness Selection / Exclusion | ROG 4 identified the principal witness-selection decisionmakers and potential conferees, but UNR stated that it was generally unaware why particular witnesses were not interviewed. RFP 22 sought witness-list, non-contact, rationale, outreach, and final-list materials, yet the cited response pointed only to broad productions rather than a discrete witness-selection record. | Defendant resists Plaintiff's process-bias theory, but the cited responses do not clearly set out a complete witness-selection record. |
| Hearing Access / Participation | RFP 8 and 9 sought technical logs, procedural communications, and hearing-planning materials; RFP 54 sought records of refusals to interview witnesses, accept evidence, or allow full participation. UNR pointed to broad productions and general categories rather than a discrete access-and-participation record. | Defendant treats the hearing process as sufficiently documented, but the cited responses do not clearly set out a complete access-and-participation record. |
| Access / Dissemination of Sensitive Materials | ROG 6 identified categories of persons with access to sensitive videos or images, but not the requested dates, access methods, or purposes on a person-by-person basis. RFP 14, 40, and 44 sought logs, audit trails, download or sharing events, and external disclosures, yet the cited responses do not clearly set out a complete access-and-dissemination trail. | Defendant resists dissemination and record-handling challenges, but the cited responses do not clearly set out a complete chain of access, transmission, and custody |
| Termination Decision Chain | ROG 8 identified Ketner, Leonard, and Sandoval and stated generally what each relied upon. RFP 7, 10, 11, and 24 sought broader communications, drafts, routing, and leadership materials concerning investigation, | Defendant treats termination as independently supported, but the cited responses do not clearly isolate the |

17

| Evidence Category | Discovery Response / Remaining Issue | Rule 56 Point |
|---|---|---|
| | adjudication, discipline, and termination. UNR pointed to broad productions and the formal determination chain, but did not clearly isolate the underlying decision-shaping materials. | institution-controlled materials shaping that decision chain. |
| Policy Amendments / Procedural Departures | ROG 9 and 14 sought amendment history, application, and procedural departures; RFP 45 sought July 2023 amendment drafts, routing, approval chains, and related communications. UNR referred generally to NSHE Chapter 6 changes, denied awareness of material departures except a possible six-day appeal issue, and objected broadly to RFP 45 while stating that it had produced responsive documents. | Defendant treats the 2023–24 process as procedurally regular, but the cited responses do not clearly set out the amendment and application history. |
| Institutional Benefit / Financial Benefit | RFP 28 sought financial or institutional benefit records and drew an unaware-of-any-responsive-documents response; RFP 47 sought broader benefit records and drew objections without a substantive production statement. | Defendant disputes benefit- or institution-level theories, but the cited responses do not clearly account for benefit records. |
| Visa Sponsorship / Dependency / Institutional Coordination | RFP 32 sought visa-sponsorship records and drew a limited Bates-range response; RFP 34 sought records reflecting institutional awareness of visa-based pressure or coercion and drew no production; RFP 36 and 37 sought post-complaint management and inter-office coordination records and drew did-not-find or could-not-find responses. | Defendant contests coercion-, dependency-, or institution-level awareness theories, but the cited responses do not clearly account for broader institutional-awareness or coordination materials. |

**A-2. Public-Records Requests and Institution-Controlled Administrative-Record Access Issues**

The materials below, collected in Exhibit B, identify public-records requests bearing on institution-controlled administrative records and the related access or disclosure issues still unresolved as of opposition briefing.

| Evidence Category | Public-Records Response / Remaining Issue | Rule 56 Point |
|---|---|---|
| Institutional Notice / Routing | PRR-2025-359: Item 1 was produced in redacted form. As to Items 2 and 3, UNR stated that the request did not identify specific existing records and could not be processed as written. | Institution-controlled notice and routing records were only partially made available. |
| TNG Retention / Authorization | PRR-2025-362: UNR stated that it was still reviewing records and needed additional time to respond. | Records bearing on investigative structure and TNG-related retention or authorization remained unresolved before opposition briefing. |
| Title IX Administrative Communications | PRR-2025-375: After clarification, UNR stated that the Frybarger–Doucette-Perry request yielded more than 2,000 potentially responsive documents and required further narrowing. | Even after clarification, the requested administrative-communications record remained unresolved before opposition briefing. |

19

**Appendix B — Response to Defendant's No-Evidence and Purportedly Undisputed Assertions**

Appendix B identifies Defendant's principal dispositive assertions, purportedly undisputed premises, and related non-dispositive contentions, and states, in compressed form, why none supports summary judgment on the present record. It shows, proposition by proposition, that Defendant's motion can prevail only if the Court resolves disputed inferences in Defendant's favor, treats disputed process-generated materials as neutral, reliable, and complete, or accepts contested legal characterizations as undisputed fact.

**B-1. Dispositive Assertions Matrix**

| UNR Assertion | Short Rebuttal | Why Triable |
|---|---|---|
| Investigation- and hearing-based retaliation theories are unexhausted (MSJ 16–17) | Title IX imposes no administrative exhaustion requirement; as to Count IV, Defendant's charge-filing theory is nonjurisdictional and, at minimum, later process-related events remain relevant as background evidence. | Even under Defendant's framing, the cited process events remain relevant to motive, causation, pretext, and institutional response. |
| No but-for causation (MSJ 17–18) | Depends on severing termination from the same challenged investigative and adjudicative chain and from the surrounding power-imbalance and institutional context reflected in the record. Ex. D at FA000021–30, 000082–90; Ex. E at UNR-000180–186, 000199–200; Ex. F at UNR-10625–26, 10825–34, 039600-06. | A reasonable jury could view the challenged process and termination as one continuous retaliatory chain. |
| Legitimate, non-retaliatory basis (MSJ 18–20) | Treats formal end-products as self-validating while disregarding evidence that the process, inputs, and institutional premises underlying those end-products are disputed. Ex. D at FA000021–30, 000031–36, 000048–51, 000082–90; Ex. E at UNR-000180–186, 000199–200, 000799–80; Ex. F at UNR-10625–26, 10825–34, 039600-06. | A rationale derived from a disputed process cannot be treated as dispositive at summary judgment. |
| No pretext (MSJ 19–20) | Assumes the reliability of the very process-generated record from which UNR's explanation is drawn and discounts contrary inferences arising from disputed record formation, asymmetry, and institutional context. Ex. D at FA000021–30, 000031–36, 000048–51; Ex. E at UNR-000180–186, 000199–200, 000799–90; Ex. F at UNR-10625–26, 039600-06. | Pretext cannot be resolved as a matter of law where the explanation rests on a disputed record. |
| No actual knowledge under Title IX (MSJ 20–21) | Narrows notice in UNR's favor by abstracting Plaintiff's complaint from the surrounding coercive, supervisory, and dependence context reflected in the record. Ex. C | Actual knowledge remains triable on this record. |

| | | |
|---|---|---|
| | PF000090–93; Ex. D at FA000021-23; Ex. F at UNR-003678, 010618–24, 10625–26. | |
| Response not clearly unreasonable (MSJ 20–22) | Equates institutional activity with institutional reasonableness and assumes that the existence of process steps alone defeats a jury question. Ex. D at FA000025; Ex. E at UNR-000039–43, 000164–166, 000204–205, 000779–798; Ex. F at UNR-10625–26. | Whether UNR's response was clearly unreasonable remains for the jury. |
| No deprivation caused by UNR (MSJ 21–22) | Artificially isolates the underlying misconduct from UNR's own response process and adjudicative mechanism. Ex. C at PF000011–12, 000029–39, 000226–45. Ex. D at FA000025, 000080–90. Ex. E at UNR-000001, 000180–200. | A jury could find that UNR's own response process contributed to the deprivation. |
| No knowing benefit under § 1595(a) (MSJ 22–23) | Narrows benefit to direct or explicit gain and ignores competing inferences arising from institutional retention and continued employment-related value. Ex. C at PF000233–34; Ex. F at UNR-003678, 010634–36. | Benefit remains triable under § 1595(a). |
| No venture participation under § 1595(a) (MSJ 23–24) | Recasts institutional coordination, retention, and adjudicative structuring as irrelevant administration. Ex. C at PF000001–12, 000024–29, 000031–37, 000231–34; Ex. F at UNR-003678, 010825–26. | Participation remains triable under § 1595(a). |
| No actual or constructive knowledge under § 1595(a) (MSJ 23–24) | Draws the knowledge inference in UNR's favor despite complaint, routing, and record evidence of institutional notice. Ex. C PF000090–93; Ex. D at FA000021-23; Ex. F at UNR-003678, 010618–24, 10625–26, 010825–26. | Actual or constructive knowledge remains triable. |

## B-2. Asserted Undisputed Premises Matrix

| Asserted Undisputed Premise | Why Disputed | Why It Cannot Be Treated as Undisputed |
|---|---|---|
| The investigation and hearing procedures were sufficient (MSJ 18–22) | Process sufficiency turns on disputed facts concerning evidence development, memorialization, access, participation, and record formation. (Ex. D at FA000021–30, 000031–36, 000048–51, 000082–90. Ex. E at UNR-000180–186, 000779–787. Ex. F at UNR-010618–38, 039600–606.) | The process cannot serve as an undisputed baseline where its formation and operation remain contested. |
| Plaintiff was afforded adequate notice and opportunity to participate (MSJ 3, 10–14) | Participation, access, scheduling, and hearing-mode conditions remain disputed, as does whether those conditions permitted meaningful testing of the process-generated record. (Ex. D at FA000021–30, 000031–36, 000048–51, 000082–90. Ex. E at UNR-000179-186, 000204–205, 207–209, 000784–791. Ex. F at UNR-010634–36, 039600–606.) | Adequate opportunity cannot be treated as undisputed where meaningful participation itself remains contested. |
| Any investigative flaws were minor or | Whether those defects affected credibility, evidence development, participation, record formation, or | Materiality cannot be resolved as a matter of law |

| immaterial (MSJ 18–19) | outcome remains disputed. (Ex. D at FA000021–030, 000031–036, 000048–51, 000082–090, 000097–121. Ex. E at UNR-000185–186, 000780–86. Ex. F at UNR-039600–606.) | while the effect of the defects remains disputed. |
|---|---|---|
| The hearing officer's determination provides a reliable baseline for summary judgment (MSJ 10–14) | The determination is an end-product of the same disputed process and record, not a neutral baseline immune from challenge. (Ex. D at FA000031–36, 000048–51, 000082–90, 000097–121. Ex. E at UNR-000039–43, 000164–166, 000180–186, 000199–200, 000204–205, 000208. Ex. F at UNR-039600–606.) | The determination cannot serve as a neutral summary-judgment baseline while the underlying process and record remain disputed. |
| The appeal determination independently confirms the outcome (MSJ 10–14) | A later appeal does not eliminate disputes over the underlying record, participation conditions, or process formation. (Ex. E at UNR-000001, 000779–798. Ex. F at UNR-039600–606.) | The appeal decision cannot convert a disputed process into an undisputed one. |
| Termination followed the hearing and appeal and therefore reflects an independent basis (MSJ 11–14) | Formal chronology does not itself sever causation where the same disputed process and contested inferences carried forward into the final outcome. (Ex. D at FA000021–030, FA000031–036, 000048–51, 000082–90, 000097–121. Ex. E at UNR-000001, UNR-000180–186, 000199–200, 000779–780, 000790–791. Ex. F at UNR-010618–38, 039600–606, 039629–039631.) | Sequence alone cannot make independence undisputed where the chain itself is contested. |
| UNR's post-notice actions were sufficient (MSJ 3, 18–22) | Institutional activity is not equivalent to undisputed reasonableness, particularly where the adequacy, direction, and consequences of the response remain contested. (Ex. D at FA000021–030. Ex. E at UNR-000180–186, UNR-000779–787. Ex. F at UNR-010625–26) | The response cannot establish reasonableness as a matter of law on this disputed record. |
| The process-generated record can be treated as reliable and complete (MSJ 10–21) | Record formation, memorialization, omissions, access, and testability remain disputed, including whether the record omits power-imbalance context reflected elsewhere in the record. (Ex. D at FA000021–030, 000031–036, 000048–51, 000082–090, 000097–121. Ex. E at UNR-000179–186, 000780–798. Ex. F at UNR-010618–38, 010825–37, 039600–606.) | The record cannot be treated as an undisputed summary-judgment baseline while its reliability and completeness remain contested. |

## B-3. Non-Dispositive Contentions

| UNR Contention | Correct Merits Significance | Rule 56 Consequence |
|---|---|---|
| UNR later investigated and terminated Jiang (MSJ factual summary) | Later action against Jiang does not by itself resolve the legality of Defendant's earlier response, the challenged process, or the resulting adverse action. | It therefore does not entitle Defendant to judgment as a matter of law on Plaintiff's surviving claims. |

| The process need not have been perfect (MSJ 18–20) | Plaintiff's theories do not depend on abstract perfection, but on whether the challenged process can reasonably be found one-sided, inadequate, or outcome-distorting. | That proposition therefore does not eliminate triable issues under Rule 56. |
|---|---|---|
| Plaintiff's objections concern only collateral details of the Title IX process (motion theme) | The challenged matters are not collateral insofar as they bear on record formation, participation conditions, neutrality, or decisional reliability. | Re-labeling them as collateral therefore does not render them immaterial to the Rule 56 inquiry. |

23

**EXHIBIT LIST**

Exhibit A –    UNR's Discovery Responses

Exhibit B –    Selected Public-Records Requests and Responses

Exhibit C –    Immigration Dependence, Professional Reliance, Evaluative Role, and Jiang Statements

Exhibit D –    Selected Documents from UNR's Title IX Investigation Chain

Exhibit E –    UNR-Produced Materials from the Title IX Hearing, Determination, and Appeal Record

Exhibit F –    UNR-Produced EO/TIX, TNG, Hearing-Officer, and Related Process Records

Fei Fei Fan
100 Avenue G Apt 568
Bayonne, NJ 07002
(404) 432-4868
litmus9@msn.com
feifei.fan@hotmail.com
Pro Se

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

FEI FEI FAN,

          Plaintiff,

vs.

State of Nevada Ex Rel. Board of Regents of the Nevada System of Higher Education, On Behalf of the University of Nevada, Reno

          Defendant.

Case No.: 3:24-cv-00427-MMD-CLB

**Declaration of Fan in Support of Plaintiff's Opposition to UNR's Motion for Summary Judgment**

I, Fei Fei Fan, declare as follows:

1. I am the Plaintiff in this action and submit this declaration in support of my Opposition to UNR's Motion for Summary Judgment.

2. The exhibits attached to and cited in the Opposition are true and correct copies of documents that I obtained, received, or produced during the course of this litigation.

3. To the best of my knowledge, the factual statements in the Opposition are supported by the documents submitted herewith and cited therein.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Respectfully submitted,

Executed this 6th day of April, 2026

*Fei Fei Fan.*
_____

Fei Fei Fan
Plaintiff, Pro Se

Fei Fei Fan
100 Avenue G Apt 568
Bayonne, NJ 07002
(404) 432-4868
litmus9@msn.com
feifei.fan@hotmail.com
Pro Se

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

FEI FEI FAN,
               Plaintiff,

vs.

State of Nevada Ex Rel. Board of Regents of the Nevada System of Higher Education, On Behalf of the University of Nevada, Reno
               Defendant.

Case No.: 3:24-cv-00427-MMD-CLB

**CERTIFICATE OF SERVICE**

I, Fei Fei Fan, certify that on April 6, 2026, I served the following document(s):

- Plaintiff's Opposition to Defendant's Motion for Summary Judgment

on the following individuals by Electronic Filing (via CM/ECF system):

1. Frank Z. LaForge, Esq. (counsel for Defendant);

2. Tania Gonzalez Contreras, Esq. (counsel for Defendant).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: April 6, 2026

_Fei Fei Fan._
_____

Fei Fei Fan

Plaintiff, Pro Se

26